2007 WY 174

**Dusty Lee MORRIS, Appellant (Defendant),**

v.

**Michelle Lynn MORRIS, Appellee (Plaintiff).**

**No. S–07–0035.**

Supreme Court of Wyoming.

Nov. 2, 2007.

Representing Appellant: DaNece Day of Lubnau & Bailey, PC, Gillette, Wyoming.

Representing Appellee: Matthew R. Sorenson and Rebecca L. Falk of Daly Law Associates, LLC, Gillette, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]  Dusty Morris (Father) appeals from the district court's order denying his petition to modify the child custody provisions of the decree divorcing him from Michelle Morris (Mother).  We conclude the district court did not abuse its discretion and, consequently, affirm.

## ISSUE

[¶ 2]  Father states the following issue on appeal:

Did the trial court abuse its discretion by finding that the changes that had occurred following the parties divorce were not material pursuant to W.S. § 20–2–204(c)?

Mother's statement of the issue is not significantly different.

## FACTS

[¶ 3]  Mother and Father divorced in the fall of 2003.  They stipulated that Mother would have primary custody of the couple's two sons, subject to reasonable visitation by Father.  In 2005, the younger son developed some behavioral issues, including displaying aggressive and violent tendencies.  Mother and Father discussed the younger son's problems and decided that, following summer visitation in 2005, he would stay with Father.  Mother filled out a *pro se* modification petition and signed it.  She sent it to Father for him to complete and file with the district court.  However, before the petition was filed, Mother changed her mind.  Although she informed Father of her change of heart, he filed the petition (on behalf of Mother), accepted service of it, and filed an answer and counterclaim, seeking custody of both boys.  Mother moved to dismiss the petition and objected to Father's counterclaim.

[¶ 4]  The district court held an evidentiary hearing on Father's request to be awarded primary custody of both boys.  After hearing from several witnesses on both sides, the district court issued a decision letter and ruled that, although circumstances had changed since the original decree was entered, those changes were not material and did not warrant a change in custody.  The district court entered an order denying Father's petition, and he appealed.

## STANDARD OF REVIEW

[¶ 5]  On appeal, we "will not interfere with the trial court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion."  *Fergusson v. Fergusson*, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002).

'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria.'  *Mintle v. Mintle*, 764 P.2d 255, 257 (Wyo.1988) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986)).  'In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably

have concluded as it did.' *Matter of Adoption of BGH*, 930 P.2d at 377–78 (quoting *Matter of Adoption of CCT*, 640 P.2d 73, 76 (Wyo.1982)). In the context of alleged abuse of discretion, the assessment of the circumstances in the case

> is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party.

[*In re: Adoption of TLC, TOC v. TND*, 2002 WY 76, ¶ 9, 46 P.3d 863, 867–68 (Wyo. 2002) ] (quoting *Basolo v. Basolo*, 907 P.2d 348, 353 (Wyo.1995)).

*CJ v. SA*, 2006 WY 49, ¶ 5, 132 P.3d 196, 199 (Wyo.2006).

## DISCUSSION

[¶ 6] The district court's authority to modify the custody provisions of a divorce decree is found in Wyo. Stat. Ann. § 20–2–204(c) (LexisNexis 2007). That provision states, in relevant part:

> A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances.

Under the statute, the party seeking modification of the child custody provisions of a decree has the burden of establishing that a material change in circumstances which affects the children's welfare has occurred since the decree was entered, the change justifies modification of the decree and modification would be in the children's best interests. *Jackson v. Jackson*, 2004 WY 99, ¶ 8,

96 P.3d 21, 24 (Wyo.2004); *Fergusson*, ¶ 9, 45 P.3d at 644.

[¶ 7] Father claims the district court abused its discretion by ruling the changes of circumstances which occurred after the divorce were not material and did not justify a change of custody. In its decision letter, the district court explained:

> The court finds that although there have been change[s] of circumstances since the most recent order in this case, the changes do not warrant modification of the decree as to child custody and visitation.

In determining whether or not a material change of circumstances has occurred since the original decree, we must evaluate "the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered." *CLH v. MMJ*, 2006 WY 28, ¶ 10, 129 P.3d 874, 877 (Wyo.2006). "A district court's finding concerning a material change in circumstances is principally a factual determination to which we accord great deference." *Id.*, ¶ 11, 129 P.3d at 877, citing *Yates v. Yates*, 702 P.2d 1252, 1256–57 (Wyo.1985). Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did. *Id.*

[¶ 8] Father claims a material change of circumstances occurred because Mother failed to comply with the "Mandatory Provisions" of the divorce decree. In general, the provisions required cooperation between the parties and specifically required the parties to inform one another of significant events in the children's lives. Father points to evidence that Mother did not inform him in a timely manner of some moves, the children's change of school, her telephone number, the elder son's allergies and how to treat them, the elder son's counseling, certain illnesses and accidents or the fact that she had taken the children to the dentist.

[¶ 9] After examining the entire record, we note that Mother did, at times, fail to communicate with Father as required by the decree. While we do not condone her failures, significant evidence was presented that she informed Father of many events affect-

ing the children, including illnesses and injuries. She also discussed issues involving the children with Father, including the elder son's need for counseling (although she did not inform him when she had actually placed him in counseling) and the younger son's behavioral problems. In addition, the boys told Father about significant events during weekly telephone calls, which it is fair to say Mother allowed and facilitated. While this mode of communication is not ideal, Father was still made aware of those matters and, presumably, could have contacted Mother if he needed or wanted further information.

[¶ 10] The district court did not believe Mother's failures to communicate constituted a material change of circumstances and, instead, faulted both parties for the break down in communication. The court included the following admonition in its decision letter:

> The court is concerned about the parties' lack of communication. In addition, much of the communication attempted is rather poor. Suffice it to say that both parties need substantial work in this area. Should this not change, the parties are likely to be back in court on other requests to change custody. * * * * This is also a place for the court to clearly indicate that the lack of communication and poor communication is not just an issue caused by Mother.

The district court's appraisal is a reasonable assessment of the evidence in this case; consequently, we conclude the district court did not abuse its discretion by refusing to find that Mother's communication failures constituted a material change of circumstances.

■■■ [¶ 11] Father also claims Mother's violation of the visitation provisions of the decree amounted to a material change of circumstances. Under the divorce decree, Father had the right to weekly visitation from Tuesday nights through Friday mornings, summer visitation, and certain holidays. This schedule, obviously, assumed the parties

would live in close proximity to one another. Father conceded that, because of the distance between the parties' residences, weekly and holiday visits were not practicable.

[¶ 12] Nevertheless, Father consistently sought to exercise his right to summer visitation. In 2004, Mother refused to allow Father to take the boys when he showed up to collect them for summer visitation. In a prior proceeding, the court found her in contempt of court for those actions. Immediately after the trial in this case, there was apparently another disagreement over Father's right to visit with the children. In its decision letter, the district court stated the following about the 2004 and post-trial incidents:

> Mother was at fault in denying Father's visitation during the summer of 2004. This was determined ... in the contempt hearing on October 14, 2004. Since that situation, Mother has not denied Father any visitation. Post hearing, Father filed an affidavit.[1] ... Father delineates the lack of visitation after trial and before his return to the UK. The court notes that Father had testified at trial that he was receiving great visitation with his children while he was in Gillette for the hearing. He had received the prior weekend but was not expecting as much in the coming weekend as Mother's father was in town. Although Mother again mishandled this visitation opportunity for Father, neither of these additional facts changes the decision of the court.... Since the only item of major concern against Mother was dealt with [in the contempt proceeding], the court will find that these items do not justify a change of custody.

[¶ 13] Proof of "repeated, unreasonable failure[s] by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances." Section

---

1. Father filed this affidavit pursuant to a statute which had been repealed at the time of the filing. Mother objected to the post-trial filing of "evidence" and asked that it be struck from the record or, in the alternative, the court consider her affidavit which she filed contemporaneously. The district court, apparently, considered both affidavits. We make no ruling on the propriety of this unusual procedure but note that, since neither party contests these filings on appeal, we will consider the affidavits and the district court's acceptance of them as the "law of the case." *See generally, Hicks v. Dowd,* 2007 WY 74, ¶ 33, 157 P.3d 914, 921 (Wyo.2007); *Bruns v. TW Services, Inc.,* 2001 WY 127, ¶ 20, 36 P.3d 608, 614–15 (Wyo.2001).

20–2–204(c); *Jackson v. Jackson*, 961 P.2d 393, 395 (Wyo.1998); *Russell v. Russell*, 948 P.2d 1351, 1354 (Wyo.1997). The record, when viewed in the light most favorable to Mother, does not establish that she repeatedly violated the visitation provisions of the decree. In fact, Father testified at trial that she had only interfered with his visitation rights the one time in 2004. Notwithstanding the post-trial incident mentioned above, Mother allowed Father to visit with the boys whenever he visited the area during the school year and he enjoyed visitation in the summers. Faced with this evidence, the district court did not deem the 2004 or post-trial incidents to be a material change in circumstances. That was not an abuse of discretion.

[¶ 14] Father also claims that the children's emotional issues constituted a material change in circumstances. As described above, the younger son developed behavioral problems in 2005. In addition, the elder son had an anxiety issue that manifested itself in tics and stuttering. Children's changes in behavior are legitimate considerations in the material change in circumstances inquiry. *Fergusson*, ¶ 18, 45 P.3d at 646. The district court made the following findings regarding the younger son's behavior:

The mother was having trouble with [the younger son]. Sometime prior to July, 2005, Mother called Father and they discussed problems Mother was having with [the younger son]. It appeared that [he] was getting out of control of Mother and she sought Father's help. They agreed that [he] would go and live with Father. To accomplish this end, Mother obtained a packet of pro se forms to permit the custody change. Mother filled in a Petition to Modify Decree Regarding Custody and signed it on July 8, 2005 in the State of Washington. She sent this to Father. Father had summer visitation of both children in 2005. After the visitation, Mother informed Father that she had changed her mind. She based this upon [the younger son's] improved conduct and demeanor.

[¶ 15] At the time of the trial, the younger son's behavioral problems had resolved. Mother attributed that change to Father's influence during the 2005 summer visit and her efforts to improve the family's living situation. Father testified the younger son's behavior improved during the summer visit and he believed Mother had impacted the children's conduct in a positive way.

[¶ 16] The elder son's anxiety problems had also improved at the time of trial. Mother attributed that improvement to the counseling she had arranged. Considering the record in the light most favorable to Mother, it is clear she sought help for the children's problems and the efforts of both Father and Mother were effective in resolving those problems. The district court did not abuse its discretion by failing to consider the children's emotional issues as a material change of circumstances to justify a custody modification.

[¶ 17] The fact that Mother moved frequently after the divorce is another circumstance to which Father directs our attention. The district court acknowledged Mother's and the boys' lives after the divorce were unstable. With regard to her frequent moves, the district court stated:

Much of Father's evidence dealt with Mother's changes of cities of residence and some changes of residences within the cities. Mother lived in Gillette, then Kentucky, then Washington, and finally Gillette. Mother also testified that she and her fiancé were seriously considering a move to Iowa. In Kentucky, Washington and now Gillette, Mother lived in at least two locations in each city.

The district court noted that, although other aspects of Father's life had stabilized since the divorce, he had also moved frequently. The court stated:

As noted above, Father has lived in California, Texas, and now the UK. These moves do not necessarily show stability except that he has been married and the moves have been mandated by his wife's employment. Father's employment situation was anything but stable. He changed jobs with every move and in one situation had at least two jobs.

Commenting on the parties' moves, the district court noted:

[B]oth parties have experienced numerous moves from city to city. Although it is expected for a military person to move more frequently, the instability is still there. Mother's moves within each city were somewhat caused by Father's failure to keep current on his child support.

[¶ 18]   The effect of the custodial party's relocation on the custody modification analysis has been the subject of substantial litigation. *See, e.g., Martin v. Martin*, 798 P.2d 321 (Wyo.1990); *Gurney v. Gurney*, 899 P.2d 52 (Wyo.1995); *Watt v. Watt*, 971 P.2d 608 (Wyo.1999); *Love v. Love*, 851 P.2d 1283 (Wyo.1993); *Harshberger v. Harshberger*, 2005 WY 99, 117 P.3d 1244 (Wyo.2005). In *Love* and *Gurney* we said, in cases where the custodial parent's motivation is legitimate, sincere, and in good faith and reasonable visitation by the other parent is still possible, relocation, alone, will not be considered a material or substantial change of circumstances to justify a change in custody. *Love*, 851 P.2d at 1288–89; *Gurney*, 899 P.2d at 55. In *Watt*, 971 P.2d at 616–17, we stated that the right to intrastate relocation by the custodial parent is protected by the constitutional right to travel and cannot, by itself, be considered a substantial or material change in circumstances. However, our *Harshberger* decision reinforced the statements in *Gurney* and *Love* that, in order to avoid scrutiny by the court, the relocation must be made with proper motivations and not to undermine the relationship between the noncustodial parent and the children. *Harshberger*, ¶ 12, 117 P.3d. at 1251.

[¶ 19]   Here, we are not concerned with the effect Mother's relocations had on Father's ability to exercise visitation with the children because he also relocated to places far enough away to make regular visitation impractical. In considering Mother's motivations for the moves, we note there is no indication that she moved in order to undermine the relationship between Father and the children. She moved to secure better employment and/or to be closer to family and friends, who often helped her care for the children. In addition, Father's failure to regularly pay his child support contributed to her reasons for moving. Thus, her moves were not made in bad faith, and we cannot say that the district court abused its discretion when it refused to find a material change of circumstances on that basis.

[¶ 20]   Father also points to Mother's numerous romantic relationships as evidence of her instability as a parent. The district court found in this regard:

Mother has been in several relationships. The only one that has been fairly long-term and stable is the last one. She plans to be married in March, 2007. Mother's situation has stabilized as she has become a stay-at-home mom.

[¶ 21]   There were significant discrepancies in the evidence presented regarding Mother's romantic relationships after the divorce. Father's evidence painted her dating behavior as somewhat sordid; while, her testimony simply suggested that she dated several persons, but only a few seriously. She also testified that she tried to shelter the children from some of the persons she dated and she did not display affection in the presence of the children. It was the district court's responsibility to weigh the evidence and determine the credibility of the witnesses. The district court's interpretation of the evidence and reliance on the recent stabilization of Mother's personal situation in concluding her past romantic relationships did not amount to a material change of circumstances was not an abuse of discretion.

[¶ 22]   Father presents several ancillary arguments to support his position that he successfully established a material change of circumstances. He claims that Mother did not give enough attention to the children's hygiene and left them with others too often; the district court did not give enough consideration to the fact that he had recently been awarded custody of a daughter from a previous relationship; and his new wife had a better relationship with the children than Mother's fiancé.

[¶ 23]   The evidence on Father's allegation that Mother did not pay enough attention to the boys' personal hygiene was quite sparse. The boys had contracted ringworm while

they were in Mother's care and they had only visited the dentist one time in their lives. Those facts do not, however, advance his argument that Mother was inattentive to the boys' personal needs. Father does not direct us to any evidence that the boys became infected with ringworm because they were unclean. Moreover, Mother had sought medical attention for the boys' condition. Similarly, Father does not point to any evidence that the boys had significant dental problems which were ignored by Mother.

[¶ 24] Father also argues that Mother left the children with sitters too much. Considered in the light most favorable to Mother, the evidence demonstrated that she usually arranged for family members or friends to care for the children when she was not there to care for them. Father does not direct us to any evidence indicating Mother left the children in unsafe circumstances and, when asked about specific safety concerns he had about the children, he testified that he could not "really think of any...." Moreover, as recognized by the district court, at the time of trial she was not working and, consequently, was able to personally care for the children when they were not in school.

[¶ 25] With regard to two other circumstances—the presence of a half sister in Father's household and the relative merits of the parties' significant others, the decision letter clearly shows the district court took these matters into account and still determined Father had not established a material change of circumstances. The court noted both parents had other children living in the household—Father had recently gained custody of his ten year old daughter from a prior relationship and Mother and her fiancé had a two-month old baby. The court also remarked that "the fact that both parties have either remarried or are about to remarry is simply a factor to be expected." Father has failed to show that the district court abused its discretion by refusing to consider these matters as a material change of circumstances.

[¶ 26] Finally, Father claims that the cumulative effect of these circumstances justifies a finding of a material change in circumstances and relies on *Jackson* as authority for his position. In *Jackson*, we held the district court did not abuse its discretion by considering several factors together in determining there was a material change of circumstances to justify a change of custody. *Jackson*, ¶ 12, 96 P.3d at 26. In this case, the district court did not believe all of the factors together justified a finding that a material change of circumstances had occurred. We cannot fault that ruling. Ultimately, the evidence, when considered in the light most favorable to Mother, established that, despite having experienced a great deal of instability in their lives since the divorce, at the time of the trial the boys were healthy, well-behaved children who were generally doing well in school and living in a stable home with their mother, her fiancé and their new baby.

[¶ 27] Much of Father's case focused on proving he was a better parent than Mother. His arguments would have been appropriate in an initial custody determination. However, the standard is different in a modification proceeding because changes in custody are not favored and should not be granted except in clear cases. *See, e.g., Leitner v. Lonabaugh*, 402 P.2d 713, 718–19 (Wyo.1965). As we said in *CLH*, ¶ 9, 129 P.3d at 877: "Under the principles of res judicata, a court does not have the discretion to reopen a custody order simply because, looking at the best interests of the child, it believes it can make a better decision than was made in the prior custody order." Father, thus, had the burden of establishing a material change of circumstances before the best interest analysis was appropriate. *Id.*, ¶ 11, 129 P.3d at 877. *See also, Selvey v. Selvey*, 2004 WY 166, ¶ 16, 102 P.3d 210, 214–15 (Wyo.2004). On this record, we hold the district court could have reasonably concluded Father failed to establish a material change of circumstances. Consequently, it did not abuse its discretion by denying Father's request for a change of custody.

Affirmed.