# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 44

APRIL TERM, A.D. 2013

April 17, 2013

WENDY WILLIS, f/k/a WENDY DAVIS,

Appellant
(Defendant),

v.                                                    S-12-0176

CHAD DAVIS,

Appellee
(Plaintiff).

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
    M. Jalie Meinecke of Meinecke & Sitz, LLC, Cody, Wyoming.

*Representing Appellee:*
    Matthew D. Winslow of Keegan & Winslow, P.C., Cody, Wyoming.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**VOIGT, Justice.**

[¶1]    The appellant, Wendy Willis (hereinafter Mother), appeals the district court's decision to deny her motion for modification of custody and visitation.  She claims that the district court's order does not comply with the statutes regarding child custody and visitation and that the district court improperly denied the admission of the children's treating counselor's notes and written opinion into evidence at the motion hearing.  We affirm.

## ISSUES

[¶2]    1.    Did the district court abuse its discretion when it denied Mother's motion for modification of custody and visitation?

2.    Did the district court abuse its discretion when it determined that the treating counselor's notes and written opinion regarding her counseling sessions with the children were inadmissible hearsay?

## FACTS

[¶3]    Mother and the appellee, Chad Davis (hereinafter Father), married in 2000, and two children, CD and DD, were born during the marriage.  On March 10, 2006, Father filed for divorce, and the district court entered the decree of divorce on November 19, 2007.  Father was granted primary physical and residential custody of the children, while Mother was granted "reasonable and liberal visitation."  In its decision letter, the district court specified that

> [v]isitation between [Mother] and [CD and DD] is to take place at least two weekends a month at or before 4:00 p.m. Friday and concluding at or before 4:00 p.m. Sunday.  This visitation is to primarily take place on weekends when [Father] is working.  The parties are to agree upon which weekends visitation will take place.  However, the Court realizes that this type of arrangement may become stressful and confusing to not only the parties but also the boys as it may change each month.  If either party finds that this arrangement is not working, they may notify the other party in writing and visitation will default and take place every other weekend beginning at or before 4:00 p.m. Friday and concluding at or before 4:00 p.m. Sunday.

1

[¶4]   On June 10, 2010, Mother filed a motion to modify the custody arrangement.[1]  A hearing on the motion was held on March 22 and 23, 2012, where each party called various witnesses, including experts.  The district court determined that Mother failed to demonstrate that there had been a material and substantial change in circumstances since the last request for custody modification and denied the motion.  The district court also noted the inability of Mother and Father to cooperate when determining when Mother's visits with the children would occur.  Thus, the district court ordered that Mother submit her work schedule to Father and that Father create the visitation schedule.  Additional facts will be discussed when relevant.

## DISCUSSION

### *Did the district court abuse its discretion when it denied Mother's motion for modification of custody and visitation?*

[¶5]   Mother argues that the district court abused its discretion when it denied her motion for modification of child custody because the record demonstrates that there was a material change of circumstances surrounding the original custody arrangement and that a modification of custody is in the best interests of the children.  "Decisions pertaining to child custody are within the sound discretion of the district court and will not be disturbed on appeal absent procedural error or a clear abuse of discretion."  *CLH v. MMJ (In re TLJ)*, 2006 WY 28, ¶ 6, 129 P.3d 874, 876 (Wyo. 2006).  In making this decision, we focus on whether the district court's decision was reasonable.  *Id*.  Further, "[w]e view the evidence in the light most favorable to the district court's determination, affording to the prevailing party every favorable inference and omitting from our consideration conflicting evidence."  *Id*.  After a review of the record, we find that the record supports the district court's finding that there was not a material change of circumstances and, therefore, the district court did not have jurisdiction to consider the best interests of the children and grant a custody modification.

[¶6]   "As a general rule the doctrine of res judicata applies to divorce decrees."  *Willis v. Davis*, 2010 WY 149, ¶ 12, 243 P.3d 568, 570 (Wyo. 2010).  However, Wyoming law recognizes that a modification to a custody or visitation arrangement is sometimes necessary.  *Id*.  Modification of a custody order is controlled by Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2011), which states in pertinent part:

> A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if

---

[1] Between the times the district court filed the divorce decree and when Mother filed the motion to modify custody that is at issue in this appeal, Mother and Father filed various motions with the district court, including other motions to modify custody and requests for sanctions.  Further, the district court's decision on one of those motions was appealed to this Court, which we affirmed.  *See Willis v. Davis*, 2010 WY 149, 243 P.3d 568 (Wyo. 2010).

there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a).

This statute requires the district court to find two things before granting a parent's motion to modify a custody or visitation order. First, the parent must show that there has been "a material change in circumstances since the entry of the order in question[.]" Wyo. Stat. Ann. § 20-2-204(c). If a material change in circumstances cannot be shown, the doctrine of res judicata applies to the original order. *In re TLJ*, 2006 WY 28, ¶ 8, 129 P.3d at 876. "The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of 'a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata' to a custody order." *Id*. (quoting *Kreuter v. Kreuter*, 728 P.2d 1129, 1130 (Wyo. 1986)). Thus, if there is not a material change in circumstances, the district court need not determine whether a modification would be in the best interests of the child. *See id*.

[¶7] Here, the district court determined that there had not been a material change in circumstances; however, Mother claims that that conclusion is not supported by the record. We disagree. The primary flaw with Mother's argument is that she completely disregards this Court's standard of review. Specifically, she presents this Court only with the evidence in favor of finding a material change of circumstances, as presented by her witnesses. To the contrary, this Court views the evidence in the light most favorable to the district court's conclusion, and disregards all conflicting evidence. *Id*. at ¶ 6, at 876.

[¶8] Mother claimed that a material change in circumstances occurred because the children were displaying more aggression in their behavior and because Father had not put the children into counseling. The district court concluded that any behavioral changes in the children could be attributed to Mother's behavior which has "created a stressful situation by failing to deal with situations in a mature manner which would be in the children's best interest." Further, the district court did not fault Father for not putting the children into counseling, as the children were already attending counseling paid for by Mother. The record supports the district court's findings.

[¶9] Mother called several witnesses during her case, two of which offered opinions in a clinical context. The first was a licensed psychologist who was retained as an expert witness by Mother. The second was a licensed clinical social worker who had been seeing the children as a counselor since 2008. The expert testified that she observed and interviewed the children on three different occasions and then made conclusions about what steps needed to be taken in the future to help the children with the issues they were experiencing--specifically depression and aggressive and anxious behavior. She recommended that the children continue with individual counseling, and it would be ideal if both parents agreed on the counselor. The expert opined that the tension between the

3

parents was contributing "tremendously" to the children's problems and that the children are in "crisis" because the adults in their lives are making bad decisions.

[¶10]   The counselor testified that she began treating the children in 2008 for aggression and anxiety. She had written in her notes from the initial assessment that "Mom wants to go back to court and get the boys back." The counselor recommended that the children needed to continue counseling on a weekly basis and also recommended that the parents get equal custody time with the children. She stated: "Children need both parents, and they need both biological parents in their lives."

[¶11]   Father called a licensed marriage and family therapist as an expert witness at the hearing. The expert met with the children and their family members (Father, step-mother, half-sister, and step-brother) at their home on two occasions and also met with Father and the children's step-mother at the expert's office. After the evaluation, Father's expert agreed with Mother's expert's recommendations, but also recommended that both parents attend counseling sessions of their own. She further suggested that the parents change the way in which they communicate with one another--if they can't speak to each other in person without conflict, they need to communicate via text message or e-mail. Father's expert believed the only change needed to stop the stress in the children's lives is their parents' behavior.

[¶12]   Despite Mother's claims to the contrary, there was ample evidence produced at the hearing to support the district court's finding that the children's behavior was not a material change of circumstances that could warrant a change in custody or visitation if in the children's best interests. The testimony of the counselor demonstrates that the children were having issues with aggression in 2008, which was a year before the first motion to modify custody was filed in 2009 and ultimately denied by the district court. Further, the testimony demonstrates that the behavior is not caused by some new and material change in circumstances regarding custody and visitation. Instead, it is caused by the parents' continual bad behavior towards each other which, as far as this Court can tell, has been a problem since before the divorce was finalized. Thus, these problems are nothing new and the district court did not abuse its discretion in finding this did not warrant a material change in circumstances.

[¶13]   With respect to the counseling issue, Father testified that he was involved in some of the counseling decisions when the children first began counseling. However, he became uncomfortable with the current counselor after law enforcement began investigating his family. Father testified that he would help with the costs of counseling if he had some sort of input as to the counselor, but as of now Mother insists on the children seeing the current counselor. Father explained that he had not sought other counseling for the children because he did not think they needed to see two different counselors. Because the evidence was clear that the children had been in counseling, and it is reasonable to believe only one counselor is necessary for the children, we find that

4

the district court did not abuse its discretion when it found that this also was not a material change in circumstances.

[¶14] Mother also makes reference to abuse she alleges the children have suffered at the hands of their teenaged step-brother. She claims that this information is a sufficient material change of circumstances to warrant a change in the custody order. Although the district court did not specifically discuss these allegations in its order denying Mother's motion, we conclude that the district court did not abuse its discretion in finding this information was not a material change in circumstances either.

[¶15] The counselor testified that the children told her that they did not feel safe at Father's home because their step-brother was mean to them and would hurt them. She also testified that over time she saw one of the children, DD, with a black eye on two occasions and a bruise behind his ears. When the counselor inquired about the first black eye, DD initially explained that he had fallen down, but he then later stated his step-brother hit him with a baseball bat. When he had the second black eye, he would not tell the counselor how he had received it.

[¶16] While this testimony on its own is concerning, there was also evidence presented that the counselor and Mother contacted the police about the allegations of abuse. The detective who investigated the report interviewed Mother, Father, the step-mother, the step-brother, and both children. When she interviewed DD, he told her that he received the bruise after falling off a wooden railroad tie, and the step-brother denied that he had hit DD with a baseball bat. At the end of the investigation, the detective concluded that there was no evidence to support the allegation that the step-brother had hit DD with a bat.

[¶17] Further, in response to the allegations of abuse against the step-brother, Father and step-mother have taken steps to make sure that the younger children cannot be injured accidentally during play with the step-brother. The step-mother testified that, although it makes her sad because it doesn't allow the brotherly relationship all the children had before, the step-brother does not have any physical contact with CD and DD. Father explained that there is a house rule that the boys are not allowed to engage in any wrestling or roughhousing. Additionally, the step-brother is never left alone with CD or DD. Thus, the evidence demonstrates that it is unlikely that DD or CD have been or are being abused by the step-brother and that these allegations do not constitute a material change in circumstances.

[¶18] Mother's brief devotes most of its length to why a change in the custody and visitation order would be in the best interests of the children. However, because there was not a material change of circumstances regarding the custody and visitation order, the district court did not acquire jurisdiction to consider whether a change would be in the best interests of the children. *Jensen v. Milatzo-Jensen,* 2013 WY 27, ¶ 8, -- P.3d --, --

5

(Wyo. 2013). Therefore, the district court did not abuse its discretion when it did not engage in an analysis regarding the best interests of the children. Instead, the doctrine of res judicata forbids the district court from doing so. *See id*. For these reasons, we also cannot consider whether a change of custody and visitation would be in the best interests of the children.

[¶19] We must address one final argument Mother makes regarding the district court's order. Mother asserts that "[e]ven though the [district] [c]ourt found that there was no material change of circumstances, the [district] [c]ourt sua sponte ordered that the previous visitation order should be modified." Mother's argument seems to be based upon the fact that in the original visitation schedule the district court stated:

> Visitation between [Mother] and [CD] and [DD] is to take place at least two weekends a month at or before 4:00 p.m. Friday and concluding at or before 4:00 p.m. Sunday. This visitation is to primarily take place on weekends when Chad is working. ***The parties are to agree upon which weekends visitation will take place.***

(Emphasis added.) In the order denying Mother's motion to modify custody and visitation, the district court stated:

> With respect to weekends that the Parties have to work during their scheduled visitation, the Court finds that the previous ruling contemplated both parties having some minimal degree of civility toward one another. The hope was for a schedule that accommodated each other; however, this is [obviously] not going to develop. The Court therefore orders [Father] to create the visitation schedule. [Mother] is to submit her work schedule for this purpose.
>
> As always, the parties are at liberty to schedule visitation as they may agree upon. This Court sincerely hopes that will occur.
>
> With respect to holiday visitation, it is to coincide with the school's schedule and run through the weekend before school resumes. Specifically, Thanksgiving begins the Wednesday afternoon school recesses and ends the Sunday afternoon before school resumes. Spring/Easter Break is to operate in the same way.

6

If the Thanksgiving or Spring/Easter break coincides with the same weekend of regular weekend visitation it does not mean an extra weekend for [Mother].

[¶20]   Mother argues this "change" gives Father "complete discretion over the visitation" and that "if [Father] gets angry at [M]other, he can take away her visitation entirely[.]" We find that Mother's assertions simply are not the case.  The district court's order did not modify the amount of visitation that Mother gets with the children.  She will still receive her two weekends of visitation per month.  If she does not, she may request that the district court find Father in contempt of court.   The transcripts demonstrate that Father and Mother often were unable to come to an agreement regarding which weekends Mother's visitation should take place, and they had different understandings of what days were included in holiday visitation.  To remedy the bickering between the parties in that respect, the district court put Father in charge of determining which two weekends per month Mother gets visitation.  This arrangement makes sense considering Father's work schedule originally was supposed to be the driving factor in when Mother's visitation was to take place.  Further, the district court clarified its expectations regarding what days the holiday visitations included.  Those clarifications were well within the purview of the district court and it did not abuse its discretion in making them. *Bachand v. Walters*, 809 P.2d 284, 286 (Wyo. 1991).

***Did the district court abuse its discretion when it***
***determined that the treating counselor's notes and***
***written opinion regarding her counseling sessions with***
***the children were inadmissible hearsay?***

[¶21]   Mother argues that the district court committed error when it determined that the treating counselor's notes and written opinion regarding her counseling session with the children were inadmissible hearsay.  Normally, we review a trial court's evidentiary decisions for an abuse of discretion. *Glenn v. Union Pac. R.R. Co.*, 2011 WY 126, ¶ 12, 262 P.3d 177, 182 (Wyo. 2011).  However, the basis on which Mother argues the evidence should be admissible is being raised for the first time on appeal.[2]

We strongly adhere to the rule forbidding us to consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court, except for those issues which are jurisdictional or are fundamental in nature.  We follow this rule because it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal

---

[2] At trial, Mother claimed that the counselor's notes and written opinion were admissible as statements for the purposes of medical diagnosis or treatment under W.R.E. 803(4).  On appeal, she argues that the documents are admissible as a business record pursuant to W.R.E. 803(6).

theories or issues never formally raised in the pleadings nor argued to the trial court.

*Washington v. State*, 2011 WY 132, ¶ 15, 261 P.3d 717, 721 (Wyo. 2011) (quoting *Erwin v. State, DFS*, 2010 WY 117, ¶ 15, 237 P.3d 409, 414 (Wyo. 2010) (internal citations and quotations omitted)).

[¶22]  Whether certain evidence is admissible at a hearing certainly is not jurisdictional in nature.  Further, it cannot be argued that this evidence was fundamental as the counselor testified at length at the hearing.  Mother claims that the omission of the evidence was egregious because it contained information regarding the emotional and psychological detriment of the children due to the amount of time that they spend with their Mother, the violence from the step-brother, that the children do not feel safe at home, and that Father had coached the children not to report negative things to the counselor.  However, the counselor testified regarding each of these allegations at the hearing.  Thus, we decline to consider whether the district court's decision regarding the evidence was error.

## CONCLUSION

[¶23]  The district court's conclusion that Mother failed to demonstrate a material change in circumstances surrounding the custody and visitation order is supported by the facts presented at the hearing.  For that reason, the district court was not required to engage in an analysis of whether a change in custody or visitation was in the best interests of the children.  Finally, we decline to consider Mother's argument that the counselor's notes and written opinion were admissible as business records under W.R.E. 803(6) because that issue is being raised for the first time on appeal.  We affirm the district court's order denying Mother's motion to modify custody and visitation.